Filed 1/16/14  P. v. Bristol CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>BRANDON MICHAEL BRISTOL,<br><br>    Defendant and Appellant. | F064363<br><br>(Super. Ct. No. BF138391A)<br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Kern County.  Kenneth C. Twisselman II, Judge.

Lauren E. Dodge, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman, Deputy Attorney General, for Plaintiff and Respondent.

-ooOoo-

On December 8, 2011, defendant Brandon Michael Bristol was convicted of attempting to commit a lewd or lascivious act upon M.H.,[1] a child under the age of 14 (Pen. Code, §§ 288, subd. (a), 664; count 1), and annoying or molesting C.A., a child under the age of 18 (*id.*, § 647.6, subd. (a); count 2). He was acquitted of annoying or molesting A.A., a child under the age of 18 (*id.*, § 647.6, subd. (a); count 3). On appeal, defendant contends the trial court erroneously admitted evidence of his prior sexual offense. He also requests independent review of sealed materials with respect to his motion for discovery pursuant to *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 (*Pitchess*). We affirm.

## STATEMENT OF FACTS

I.   Prosecution Evidence

Around 7:00 p.m. on September 5, 2011, defendant visited the Bakersfield home of his neighbor Carmen P. and socialized with her father Ruben P. in the garage. When Carmen came into the garage, defendant hugged her.[2] She smelled alcohol on his person. Meanwhile, Carmen's four-year-old son A.A. and three-year-old daughter C.A. were playing in the front yard with other children, including nine-year-old neighbor M.H. After Carmen checked on them, she went inside her house. From her bedroom window, she watched the children and defendant enter the backyard. At some point, defendant unzipped his pants. He grabbed M.H.'s wrist and pulled her hand toward his crotch. M.H. freed herself and ran out of the backyard. Defendant stayed, played with C.A. for about five minutes, and then lied down on the grass. He pulled down his shorts and

---

[1]   In this opinion, certain persons are identified by an abbreviated name in accordance with the Supreme Court's policy regarding protective nondisclosure. Also, individuals who share a last name are identified by their first name to avoid confusion. In both instances, no disrespect is intended.

[2]   Carmen testified that defendant visited her home over 50 times and normally greeted her with a handshake.

underwear, masturbated with his right hand, and tried to grab C.A. with his left hand. Carmen, who witnessed the incident, hurried to the backyard. She screamed at defendant, who stood up, pulled up his shorts, and fled. After Carmen brought the children inside the house, she ran to the front yard, observed defendant "fast walking" home, and called the police.

Defendant returned to his house and asked his mother Peggy Langels for his car keys. Langels refused to help, stating that he had been "drinking all day." Defendant eventually found the keys in his bedroom and drove away in a white truck. Officer Joseph Calvillo of the Bakersfield Police Department was dispatched to the scene. After he interviewed Carmen, M.H., and Langels, he and his partner John Blunt searched the vicinity for defendant's vehicle to no avail. Defendant came back the following morning. He was arrested after Langels called the police.

The prosecutor filed a motion in limine to admit evidence of defendant's prior sexual offense, including three images of child pornography found under the backseat of his vehicle during a lawful search on June 9, 2005.[3] The trial court admitted one of the photographs into evidence and allowed brief descriptions of the other two. On direct examination, Deputy Michael Boyd of the Kern County Sheriff's Office, who conducted the search, described the first excluded image:

> "A. Two young girls I would estimate eight or nine years old, totally unclothed, on a bed, simulating a sex act. One girl's on her hands and knees. And the other girl is behind her, on her knees.
>
> "Q. And is the girl that's behind her on her knees, would that be commonly referred to as doggie style?

---

[3] Defendant was charged with possession or control of child pornography (Pen. Code, § 311.11), but pled guilty to the lesser charge of engaging in "lewd or dissolute conduct in any public place or in any place open to the public or exposed to public view" (Pen. Code, § 647, subd. (a)).

3.

"A.  Yes.

"Q.  And is she touching the other girl that's on the bed?

"A.  She's got both of her hands placed on the other girl's buttocks."

Next, he described the second excluded image:

"A.  There's two young girls also about eight or nine years old. They do have their clothes on.  One girl is standing.  She is holding what looks like two tomatoes down to her crotch area.  There's another girl about the same age, eight or nine, with clothes on, that is kneeling next to her, holding what looks like a cucumber between the two tomatoes in front of the girl, near her crotch area.

"Q.  And is the girl that is kneeling in her crotch area doing anything with her mouth?

"A.  Yes.  She's got her mouth open near the cucumber.

"Q.  Is it simulating a blow job, or oral copulation?

"A.  Yes.  That is what I perceive it to be.

"Q.  And the clothes, are they shorts, short shorts, and a tank top?

"A.  That's what the girl's wearing.  The one on the ground or kneeling has some thin straps on the shirt and has some black shorts with what looks like a leopard print on it."

Sergeant Doug Wilson of the Kern County Sheriff's Office, who was also involved in the investigation of defendant's prior offense, echoed Boyd's testimony:

"[The first] photo shows two young girls I believe on a bed.  One is on her knees, bent over -- both girls are naked, on her knees, bent over, with their hands on the bed, looking back like as towards the camera.  And with another young girl apparently the same age, close to the same age, behind her, naked, on her -- I believe on her knees also on the bed, with her hands on the kneeling girl's buttocks.  [¶] … [¶] … [The second] photo contains two girls of approximately the same age.  Both of them are clothed, I believe, in shorts and tops.  One is standing on a chair, holding two tomatoes in front of her crotch area.  The other girl is kneeled on a chair

4.

just in front of her, holding what appears to be a cucumber between the tomatoes and with her face close to the cucumber, with her mouth open."**4**

Boyd and Wilson further testified that all three images were tattered and mended with Scotch Tape.

II.     Defense Evidence

Defendant testified that he began to drink alcohol in excess when he was enlisted in the Army more than 20 years ago.  He consumed "about a 12-pack a night."  On many occasions, defendant experienced alcohol-induced blackouts and thereafter could not recount where he was or what he did.

On September 5, 2011, defendant drove his girlfriend to Los Angeles International Airport.  On the return trip to Bakersfield, he drank six beers and purchased another "36 pack."  Defendant subsequently visited Ruben.  He recalled "playing … stick ball in the front yard with the kids" and then "[w]aking up with Carmen screaming her bloody lungs out at [him], calling [him] a perverted bastard, what are you doing."  Defendant could not remember "anything from the backyard," "what the hell [he was] doing [t]here," "what the hell [he was] doing," or "how [he] got home."

---

**4**     The court issued CALJIC 2.50.01 to the jury regarding evidence of defendant's prior sexual offense:

> "Evidence has been introduced for the purpose of showing that the defendant engaged in a sexual offense other than that charged in the case.  'Sexual offense' means a crime under the laws of a state or of the United States that involves the following:  any conduct made criminal by Penal Code Section 311.11[,] Subdivision (a)….  [¶] … [¶] … [I]f you find by a preponderance of the evidence that the defendant committed a prior sexual offense, that is not sufficient by itself to prove beyond a reasonable doubt that he committed the charged crimes.  [¶]  If you determine an inference properly can be drawn from this evidence, this inference is simply one item for you to consider along with all other evidence in determining whether the defendant has been proved guilty beyond a reasonable doubt of the charged crime."

Prior to September 5, 2011, M.H., C.A., A.A., and other children in the neighborhood frequently went to defendant's house to play with him and his dog. Although he physically interacted with these children "[p]robably a thousand times," he did not touch them with sexual intent. Defendant denied that he was a child molester or sexually attracted to children.

Regarding his prior offense, defendant stated that he came across the images of child pornography while he was browsing an adult pornography website. He printed these "bizarre" photographs, placed them in a folder, and "threw them under the back seat" of his truck "for over a year" because he did not want anyone to find them in his house and think that "[he] was sick." Defendant "didn't look at [the images] again" and later forgot that they were in his truck.

## DISCUSSION

I.  Evidence of defendant's prior sexual offense was admissible because the probative value outweighed prejudicial effect.

Generally, "evidence of a person's character or a trait of his or her character (whether in the form of an opinion, evidence of reputation, or evidence of specific instances of his or her conduct) is inadmissible when offered to prove his or her conduct on a specified occasion." (Evid. Code, § 1101, subd. (a).)[5] However, in a criminal action in which a defendant is accused of a sexual offense, evidence of the defendant's commission of another sexual offense is not made inadmissible by section 1101, so long as the evidence is not made inadmissible by section 352. (§ 1108, subd. (a).) The California State Legislature enacted section 1108 to "relax the evidentiary restraints" imposed by section 1101, "expand the admissibility of disposition or propensity evidence in sex offense cases," and "assure that the trier of fact would be made aware of the

---

[5]    All subsequent statutory citations refer to the Evidence Code unless otherwise indicated.

6.

defendant's other sex offenses in evaluating the victim's and the defendant's credibility." (*People v. Falsetta* (1999) 21 Cal.4th 903, 911 (*Falsetta*).)[6]

"By removing the restriction on character evidence in section 1101, section 1108 now 'permit[s] the jury in sex offense … cases to consider evidence of prior offenses *for any relevant purpose*' [citation], subject only to the prejudicial effect versus probative value weighing process required by section 352." (*People v. Britt* (2002) 104 Cal.App.4th 500, 505, original italics; accord *People v. Robertson* (2012) 208 Cal.App.4th 965, 990 (*Robertson*).) "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury." (§ 352.) Factors to weigh include the "nature, relevance, and possible remoteness [of the uncharged sex offense], the degree of certainty of its commission and the likelihood of confusing, misleading, or distracting the jurors from their main inquiry, its similarity to the charged offense, its likely prejudicial impact on the jurors, the burden on the defendant in defending against the uncharged offense, and the availability of less prejudicial alternatives to its outright admission, such as admitting some but not all of the defendant's other sex offenses, or

---

[6] In *Falsetta*, the Supreme Court noted:

"[T]he Legislature's principal justification for adopting section 1108 was a practical one: By their very nature, sex crimes are *usually* committed in seclusion without third party witnesses or substantial corroborating evidence. The ensuing trial often presents conflicting versions of the event and requires the trier of fact to make difficult credibility determinations. Section 1108 provides the trier of fact in a sex offense case the opportunity to learn of the defendant's possible disposition to commit sex crimes." (21 Cal.4th at p. 915, italics added.)

To the extent defendant asserts that section 1108 does not apply "because the charged acts were committed in a quasi-public place, in daylight hours and in plain view of other witnesses," we disagree.

excluding irrelevant though inflammatory details surrounding the offense."  (*Falsetta*, *supra*, 21 Cal.4th at p. 917.)  Evidence should be excluded as unduly prejudicial """"when it is of such nature as to inflame the emotions of the jury, motivating them to use the information, not to logically evaluate the point upon which it is relevant, but to reward or punish one side because of the jurors' emotional reaction.  In such a circumstance, the evidence is unduly prejudicial because of the substantial likelihood the jury will use it for an illegitimate purpose.""""  (*People v. Scott* (2011) 52 Cal.4th 452, 491; see also *People v. Gionis* (1995) 9 Cal.4th 1196, 1214 ["prejudice" set forth in § 352 does not refer to prejudice or damage to a defense that naturally flows from relevant, highly probative evidence, but applies to evidence that uniquely tends to evoke an emotional bias against the defendant as an individual and has very little effect on the issues].)

We review a trial court's evidentiary ruling under sections 1108 and 352 for abuse of discretion and will reverse only if the ruling was arbitrary, whimsical, or capricious as a matter of law.  (*Robertson*, *supra*, 208 Cal.App.4th at p. 991.)

We conclude the trial court did not abuse its discretion when it admitted evidence of defendant's prior sexual offense because the probative value outweighed prejudicial effect.  In the instant case, defendant was charged with one count of attempting to commit a lewd or lascivious act upon a child under the age of 14 and two counts of annoying or molesting a child under the age of 18.  He claimed that he did not have the intent to arouse, appeal to, or gratify his lust, passions, or sexual desires (see *People v. Whitham* (1995) 38 Cal.App.4th 1282, 1290 ["[Penal Code] section 288 is a specific intent crime."]; see also *People v. Montes* (2003) 112 Cal.App.4th 1543, 1549 [an attempt to commit a crime requires a specific intent to commit the particular offense]) or to direct annoying or molesting conduct toward a child (see *People v. Phillips* (2010) 188 Cal.App.4th 1383, 1394 ["The intent to be observed while engaging in the offensive conduct [proscribed by Penal Code section 647.6, subdivision (a)] is subsumed in the element that the offender 'directs' his conduct toward a child."]; see also *People v. Shaw*

8.

(2009) 177 Cal.App.4th 92, 103-104 ["'Although no specific intent is prescribed as an element of [Penal Code section 647.6], a reading of the section … indicates that the acts forbidden are those motivated by an unnatural or abnormal sexual interest or intent with respect to a child.'"]). Evidence of defendant's previous possession of child pornography was relevant to prove intent as well as impugn credibility. The three images each consisted of underage girls, either clothed or unclothed, in provocative poses.[7] Defendant conceded that he found these photographs online, printed them, stored them in a folder, and hid them in his truck for over a one-year period. Although he asserted that he simply forgot about their existence, their mended condition may suggest otherwise. The jurors could reasonably find defendant to have had an unnatural and abnormal sexual proclivity toward underage girls and, in turn, infer that he had the requisite mental state for each charged offense. (See *In re Mariah T.* (2008) 159 Cal.App.4th 428, 440 ["Because intent for purposes of Penal Code section 288 can seldom be proven by direct evidence, it may be inferred from the circumstances."]; *People v. Moore* (1955) 137 Cal.App.2d 197, 204 [intent to annoy or molest a child may be reasonably inferred from the overt act].)

We point out that the trial court engaged in section 352's weighing process, admitted only one of the three images into evidence, and allowed prosecution witnesses to briefly describe the other two.[8] It also issued a comprehensive jury instruction detailing the correct use of this evidence. (*Ante*, fn. 4.) These measures reduced the

---

**7** We have reviewed the one image admitted into evidence and do not find it to be exceedingly inflammatory. We believe defendant's conduct in the present case was "more likely to have aroused the passions of the jurors against him." (*Robertson*, *supra*, 208 Cal.App.4th at p. 993.)

**8** We note defendant offered to stipulate to the commission of the prior sexual offense. Nonetheless, "[t]he general rule is that the prosecution in a criminal case cannot be compelled to accept a stipulation if the effect would be to deprive the state's case of its persuasiveness and forcefulness." (*People v. Edelbacher* (1989) 47 Cal.3d 983, 1007.)

likelihood of inflaming emotional bias, ensured that the jury would not expend an inordinate amount of time "trying the uncharged offense[] so [as to] dwarf[] the trial on the current charge[s]," and offset the risk that the "jury might punish the defendant for his uncharged crime[] regardless of whether it considered him guilty of the charged offense[s] …." (*People v. Frazier* (2001) 89 Cal.App.4th 30, 42.) That the jurors convicted defendant of counts 1 and 2 and acquitted him of count 3 affirmatively demonstrated that they carefully examined all the evidence and reached a sensible verdict. Had they been inflamed, "[they] would have convicted [him] of all charges." (*Robertson*, *supra*, 208 Cal.App.4th at p. 994.)

We reject defendant's contention that evidence of his prior sexual offense cannot be used to prove intent because the prior offense was not the same as the charged offenses.[9] We previously held:

> "Section 1108 does not require '"more exacting requirements of similarity between the charged offense and the defendant's other offenses …."'" [Citation.] Such a requirement was not added to the statute because 'doing so would tend to reintroduce the excessive requirements of specific similarity under prior law which [section 1108] is designed to overcome, … and could often prevent the admission and consideration of evidence of other sexual offenses in circumstances where it is rationally probative." (*People v. Soto* (1998) 64 Cal.App.4th 966, 984; see also *People v. Frazier*, *supra*, 89 Cal.App.4th at p. 41 ["It is enough the charged and uncharged offenses are sex offenses …."].)

---

[9] Defendant cites *People v. Ewoldt* (1994) 7 Cal.4th 380, 402, for the following proposition: "In order to be admissible to prove intent, the uncharged misconduct must be sufficiently similar [to the charged offense] to support the inference that the defendant '"probably harbor[ed] the same intent in each instance." [Citations.]' [Citation.]" We remarked in an earlier case that "*Ewoldt*'s holding on the admissibility of prior uncharged sexual misconduct was superseded by the enactment of Evidence Code section 1108. The similarity analysis of *Ewoldt* does not apply when evidence is admitted pursuant to Evidence Code section 1108." (*Robertson*, *supra*, 208 Cal.App.4th at p. 991, citing *People v. Britt*, *supra*, 104 Cal.App.4th at pp. 505-506.)

Finally, we do not find the six-year gap between the commissions of the charged and uncharged offenses so unduly prejudicial as to justify exclusion. (See *People v. Harris* (1998) 60 Cal.App.4th 727, 739, citing *People v. Burns* (1987) 189 Cal.App.3d 734, 737-739 [20-year-old conviction meets reasonable threshold test of remoteness]; see also *People v. Soto*, *supra*, at p. 991 ["[T]he passage of a substantial length of time does not automatically render the prior incidents prejudicial."].)

II.     <u>The trial court did not abuse its discretion when it determined the personnel records of Officer Calvillo and Officer Blunt were not discoverable.</u>

On October 5, 2011, defendant filed a *Pitchess* motion for discovery of Calvillo's and Blunt's peace officer personnel records. In particular, he sought the names, addresses, and phone numbers of individuals who lodged complaints accusing Calvillo of perjury and accusing either Calvillo or Blunt of falsifying police reports and planting evidence. On November 4, 2011, the trial court conducted an in camera hearing, found no discoverable material, and sealed the reporter's transcript. Defendant asks us to review the transcript and confidential file to determine whether the court abused its discretion. The Attorney General does not object to this request.

"'A criminal defendant has a limited right to discovery of a peace officer's personnel records. [Citation.] Peace officer personnel records are confidential and can only be discovered pursuant to … sections 1043 and 1045.' [Citation.]" (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 180; see also *People v. Mooc* (2001) 26 Cal.4th 1216, 1225, fn. 3 (*Mooc*) [*Pitchess* motions codified by Legislature].) A defendant is entitled to discovery of relevant documents or information in the personnel records of a peace officer accused of misconduct against the defendant upon a showing of good cause. (*People v. Gaines* (2009) 46 Cal.4th 172, 179.) Good cause exists when the defendant shows both materiality to the subject matter involved in the pending litigation and a reasonable belief that the agency has the type of information sought. (*Ibid*.)

11.

If a defendant establishes good cause, the custodian of records should bring to court all documents that are potentially relevant to the defendant's motion. (*Mooc*, *supra*, 26 Cal.4th at p. 1226.) The trial court must then review the documents in camera to determine what information, if any, should be disclosed. Subject to certain statutory exceptions,[10] relevant information must be disclosed to the defendant. (*People v. Gaines, supra,* 46 Cal.4th at p. 179; see also *California Highway Patrol v. Superior Court* (2000) 84 Cal.App.4th 1010, 1021 [only documentation of past officer misconduct which is similar to misconduct alleged by the defendant in the pending litigation is relevant and therefore subject to discovery].) A court's ruling on a *Pitchess* motion is reviewed for abuse of discretion. (*People v. Hughes* (2002) 27 Cal.4th 287, 330; accord *People v. Samayoa* (1997) 15 Cal.4th 795, 827.)

Here, the trial court followed proper procedure and created an adequate record of the in camera hearing. (See *Mooc, supra,* 26 Cal.4th at pp. 1228-1229.) Moreover, we have examined the confidential file as part of the augmented appellate record. Our review does not reveal that the trial court failed to disclose materials "so clearly pertinent to the issues raised by the *Pitchess* discovery motion that failure to disclose them was an abuse of *Pitchess* discretion." (*People v. Samayoa, supra,* 15 Cal.4th at p. 827.) We thus conclude the court properly exercised its discretion.[11]

---

**10**    Pertinent limitations are contained in subdivision (b) of section 1045:

"In determining relevance, the court shall examine the information in chambers …, and shall exclude from disclosure: [¶] (1) Information consisting of complaints concerning conduct occurring more than five years before the event or transaction that is the subject of the litigation in aid of which discovery or disclosure is sought. [¶] (2) In any criminal proceeding the conclusions of any officer investigating a complaint filed pursuant to Section 832.5 of the Penal Code. [¶] (3) Facts sought to be disclosed that are so remote as to make disclosure of little or no practical benefit."

**11**    Because we do not find any error, we need not address defendant's arguments concerning reversible error.

## **DISPOSITION**

The judgment is affirmed.

_____
DETJEN, J.

WE CONCUR:


_____
POOCHIGIAN, Acting P.J.



_____
PEÑA, J.